UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MAYHEM CRUDE, INC.,

            Plaintiff,

     v.

BORRELLI WALSH PTE. LTD., et al.,

            Defendants.

Case No.  19-cv-04622-HSG

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Re: Dkt. Nos. 27, 31, 36

      Defendants Borrelli Walsh Pte. Ltd. ("Borrelli Walsh"), Cosimo Borrelli, and Jason Kardachi (collectively, the "Borrelli Defendants") filed a motion to dismiss for lack of personal jurisdiction and for failure to state a claim, Dkt. No. 27, and a motion to dismiss based on *forum non conveniens*.  Dkt. No. 31.  Defendant Standard Chartered Bank ("SCB") also filed a motion to dismiss on the same grounds, and have joined in the Borrelli Defendants' motions.  Dkt. No. 36.  The Court held a hearing on the motions on January 23, 2020.  Dkt. No. 54.  For the reasons set forth below, the Court **GRANTS WITHOUT LEAVE TO AMEND** the motions to dismiss.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

      Plaintiff Mayhem Crude, Inc. ("Plaintiff") is a corporation organized under the laws of the Republic of the Marshall Islands.  Dkt. No. 1 ("Compl.") ¶ 2.  Plaintiff is the registered owner of a merchant vessel named V8 STEALTH ("Vessel"), a crude oil tanker registered in the Marshall Islands.  *Id*.  Defendant SCB is a bank incorporated under the laws of England and Wales.  Dkt. No. 36-1, Declaration of Mathew Harvey ("Harvey Decl.") ¶ 3.  Defendant SCB is headquartered in England.  Compl. ¶ 6.  Defendant Borrelli Walsh is a global restructuring, insolvency, and forensic accounting firm formed under the laws of Singapore, with its principal place of business in Singapore.  *Id.* ¶ 3; Dkt. No. 28, Declaration of Cosimo Borrelli ("Borrelli Decl.") ¶¶ 2–3.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Defendants Cosimo Borrelli and Jason Kardachi are directors of Defendant Borelli Walsh,

2   Australian citizens, and reside in Hong Kong and Singapore, respectively.  Compl. ¶¶ 4–5.

3       On June 6, 2008, Plaintiff entered into a bareboat charter agreement ("Charter

4   Agreement") with JB Ugland Shipping Singapore Pte. Ltd. ("JB Ugland"), with its place of

5   business in Singapore.  *Id.* ¶ 10; Dkt. No. 1-1, Ex. 1.  Under the Charter Agreement, Plaintiff

6   chartered the Vessel to JB Ugland as the "bareboat charterer."  Compl. ¶¶ 10, 11.  The Charter

7   Agreement was amended to substitute in Siva Shipping International, Pte. Ltd. ("SSIPL"), the

8   successor corporation of JB Ugland.  *Id.* ¶ 11.  Pursuant to a credit facility agreement, SCB loaned

9   $75,000,000 to Siva Group Shipping and Trading Projects Pte Ltd ("SGSTP") (the "SCB Loan").

10  Borrelli Decl. ¶ 5.  The SCB Loan was secured by, among other things, a charge in favor of SCB

11  over the shares ("Share Pledge") owned by Pasira Holdings Limited ("Pasira"), a British Virgin

12  Isles Company, in SSIPL.  *Id.*  Pasira owned 100% of SSIPL's shares.  *Id*

13      On August 31, 2016, after SGSTP defaulted on the SCB Loan, SCB enforced the Share

14  Pledge and appointed the Borrelli Defendants as administrative receivers of the SSIPL shares

15  owned by Pasira, as well as directors of SSIPL.  *Id.* ¶ 20; Borrelli Decl. ¶ 5.  Plaintiff alleges that it

16  was not aware of the change in ownership, and "Defendants continued to commercially exploit the

17  Vessel for their own use and gain in carrying cargoes of crude oil worldwide upon voyages on the

18  high seas and the navigable waters of several countries …."  Compl. ¶ 23.

19      On October 24, 2016, Defendant Borrelli Walsh allegedly gave notice of the intended

20  redelivery of the Vessel to Plaintiff in California.  *Id.* ¶ 25.  Plaintiff alleges that Defendant

21  Borrelli Walsh did not disclose that it was a receiver of SSIPL until December 14, 2016, and also

22  "admitted that the Vessel was in severely damaged condition and needed extensive repairs that

23  would cost in excess of USD 1,000,000 to effect."  *Id.* ¶ 28.  SSIPL was financially unable to pay

24  for required repairs.  *Id.*  The Vessel arrived in California on December 18, 2016.  *Id.* ¶ 29.

25      On December 19, 2016, the Borrelli Defendants made an application to the High Court of

26  the Republic of Singapore to place SSIPL into compulsory liquidation proceedings.  Borrelli Decl.

27  ¶ 6.  The liquidation proceeding is ongoing in Singapore Court, and in that proceeding, Plaintiff

28  has an unsecured claim under the charter agreement against SSIPL.  *Id.*  Plaintiff now brings a

2

claim of conversion against the Defendants, alleging that the Defendants were required to notify Plaintiff of an ownership change and that the Borrelli Defendants wrongfully "continued to exercise possession custody and control of the Vessel" for their own use and gain. *Id*. ¶¶ 36–42.

## II.    MOTION TO DISMISS: PERSONAL JURISDICTION

### A.    Legal Standard

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1154 (9th Cir. 2006). When personal jurisdiction is challenged, "the district judge has considerable procedural leeway in choosing a methodology for deciding the motion." 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1351 (3d ed. 2018). The court may rest on the allegations in the pleadings, weigh the contents of affidavits and other evidence, or hold a hearing and resort to oral testimony. *Id.*

Although the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (quotations omitted), the court must resolve conflicts between the facts contained in the parties' affidavits in plaintiff's favor. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When the court does not conduct an evidentiary hearing, the plaintiff need only make a prima facie showing of facts supporting personal jurisdiction to avoid dismissal. *See Myers v. Bennett Law Offices*, 238 F.3d 1068, 1071 (9th Cir. 2001).

In a suit that arises under the court's admiralty jurisdiction, the due process clause of the Fifth Amendment determines whether the court has personal jurisdiction. *Pac. Atl. Trading Co. v. M/V Main Exp.*, 758 F.2d 1325, 1327 (9th Cir. 1985) (citation omitted). Due process limits a court's power to "render a valid personal judgment against a nonresident defendant." *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). Due process requires that a nonresident defendant have sufficient "'minimum contacts' with the forum such that the assertion of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach*, 453 F.3d at 1155 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 315 (1945)).

Plaintiff does not contend that the Court has general jurisdiction, *see* Dkt. 47 at 1, and the

United States District Court
Northern District of California

Court will only address specific jurisdiction.  Specific jurisdiction "exists when a case arises out of or relates to the defendant's contacts with the forum." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (quotations and citations omitted).  It "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.*  In the Ninth Circuit, there are three requirements for a court to exercise specific jurisdiction over a nonresident defendant: "(1) the defendant must either 'purposefully direct his activities' toward the forum or 'purposefully avail[ ] himself of the privileges of conducting activities in the forum'; (2) 'the claim must be one which arises out of or relates to the defendant's forum-related activities'; and (3) 'the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.'" *Axiom Foods*, 874 F.3d at 1068–69 (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).  "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802.  If the plaintiff meets that burden, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id*. (citation omitted).

**B.    Discussion**

Here, the connection to California which Plaintiff contends is sufficient to establish specific personal jurisdiction for the "worldwide" tort of conversion is that the Borrelli Defendants relinquished control of the Vessel in California, and delivered crude oil onboard the Vessel in California.  Dkt. No. 1 ¶ 27; Dkt. No. 46 at 11–12; Dkt. No. 47 at 8–12.  Noticeably lacking from Plaintiff's own allegations and the record presented to the Court, however, is any evidence that Plaintiff's claim for conversion arose out of any contacts the Defendants had with California.  In determining whether a plaintiff's claims arise out of a defendant's forum-related conduct, a plaintiff must show that it would not have suffered an injury "but for" the defendant's forum-related activities.  *See Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001).

Plaintiff contends that courts "adjudicating cases in admiralty have consistently held that a defendant charterer's …. knowledge of a vessel[ ] proceeding to a specific port within a state's jurisdiction" suffices to satisfy purposeful direction."  Dkt. No. 47 at 7.  As support, Plaintiff

1    submits emails with the Borrelli Defendants discussing the redelivery of the Vessel.  Dkt. No. 47-

2    1, Exs. 1, 3, 4; Dkt. No. 46-1, Exs 2, 3, 8.  These emails purport to establish that Plaintiff received

3    thirty days "preliminary/tentative notice" of redelivery of the Vessel to California, and that

4    beginning on November 27, 2016, the Borrelli Defendants began communicating with Plaintiff

5    regarding the redelivery of the Vessel and the possibility of performing an underwater site

6    inspection in California.  Dkt. No. 47-1, Exs. 3, 4.

7         The Defendants have submitted declarations from Defendants Borrelli and Kardachi to

8    contradict Plaintiff's bare jurisdictional allegations.  *See* Dkt. No. 32, Declaration of Cosimo

9    Borrelli ("Borrelli Jurisdictional Decl."); Dkt. No. 33, Declaration of Jason Kardachi ("Kardachi

10   Decl.").  Defendants Borrelli and Kardachi state that their duties as directors of SSIPL were only

11   conducted in Singapore, Hong Kong, or the British Virgin Isles.  Borrelli Jurisdictional Decl. ¶ 6;

12   Kardachi Decl. ¶ 4.  Defendant Borrelli further explains that Borrelli Walsh does not have an

13   office, bank account, registered agent, management, employees, or market its services in

14   California.  Borrelli Jurisdictional Decl. ¶ 8.  *Id.*  Defendants Borrelli and Kardachi further declare

15   that they have only been to California twice, only for personal purposes, and never in their

16   capacities as directors of Borrelli Walsh.  *Id.* ¶ 10; Kardachi Decl. ¶ 6.

17        Defendant SCB has also submitted declarations from Mathew Harvey, the Managing

18   Director at SCB, and Arnaud Stark, the Regional Head for SCB's Europe Group Special Assets

19   Management.  *See* Harvey Decl.; Dkt. No. 36-2, Declaration of Arnaud Stark ("Stark Decl.").  Mr.

20   Stark declares that the relevant agreements between SCB, SGSTP, and SSIPL were all executed in

21   London, Stark Decl. ¶ 4, and all documents or employees regarding SCB's relationship with

22   SSIPL are located in London, Singapore, or India.  *Id.* ¶ 5.  Similarly, Mr. Harvey explains that

23   SCB is headquartered in England and has branch locations around the world, including one in San

24   Francisco, at which Mr. Harvey is located.  Harvey Decl. ¶ 5.  The California branch "functions

25   solely as a representative office with a limited number of employees," and is not separately

26   incorporated in California.  *Id.* ¶ 6.

27        The Court is not persuaded that the redelivery of the Vessel in this district establishes that

28   Defendants have any connection to this forum that would make it reasonable for the Court to

United States District Court
Northern District of California

5

United States District Court
Northern District of California

exercise specific jurisdiction over foreign Defendants for the tort of conversion.  *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017) ("What is needed—and what is missing here—is a connection between the forum and the specific claims at issue.").[1]  All of the relevant underlying relationships and transactions cumulating in the Borrelli Defendants' appointment as Receivers—and the purported failure to notify Plaintiff— occurred in London, Singapore, or the British Virgin Isles.  Stark Decl. ¶ 4; Borrelli Decl. ¶ 6; Kardachi Decl. ¶ 4.  The continuous use of the Vessel occurred "worldwide," with no evidence or allegation that the alleged use from August 2016 through December 2016 occurred in California. Compl. ¶ 42; *id.* ¶ 23 ("Defendants continued to commercially exploit the Vessel for their own use and gain in carrying cargoes of crude oil worldwide upon voyages on the high seas and the navigable waters of several countries").

The Court concludes that Plaintiff has not carried its burden of demonstrating that its claims arise out of Defendants' contacts in California.  Plaintiff's alleged financial harm does not arise out of any activities in California, and the jurisdictional allegations are contradicted by Defendants' declarations.  Because this ground alone is sufficient to conclude that Plaintiff has not established specific personal jurisdiction, the Court need not address the remaining factors.[2] Based on the thinness of the allegations, and because the deficiencies in personal jurisdiction cannot be cured by amendment, the Court dismisses the claims without leave to amend.

---

[1] Plaintiff's contention that the "locality test" for admiralty jurisdiction requires the Court to find specific jurisdiction is misplaced.  *See* Dkt. No. 47 at 10 (citing *Harville v. Johns-Manville Prod. Corp.*, 731 F.2d 775, 782 (11th Cir. 1984)).  As that authority explains, the locality test determines whether the court has maritime jurisdiction (*i.e.*, subject matter jurisdiction), not whether the Court has personal jurisdiction over Defendants.  *Harville*, 731 F.2d at 782.

[2] Plaintiff contends that it is entitled to jurisdictional discovery "as requested with its Motion for Expedited Limited Jurisdictional Discovery."  Dkt. No. 47 at 23.  Plaintiff relies only on the earlier motion to expedite limited jurisdictional discovery.  *Id.*  In the prior motion, Plaintiff asserted that there is "good cause" for "expedited jurisdictional discovery" because "Defendants assert that the Court lacks personal jurisdiction over the Defendants," and that that the need for discovery "outweighs the prejudice to Defendants."  *Id.*  Where "a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery."  *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011) (citation and quotations omitted).  Plaintiff's jurisdictional allegations cannot be cured by amendment, and Plaintiff has not established an entitlement to jurisdictional discovery.

United States District Court
Northern District of California

### III.     FORUM NON CONVENIENS

Even if Plaintiff could establish specific personal jurisdiction over the Defendants, *forum non conveniens* is a separate ground for dismissal.  "A party moving to dismiss based on *forum non conveniens* bears the burden of showing (1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal."  *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002).  *Forum non conveniens* is an "exceptional tool," the burden on Defendant is heavy, and the standard is whether "defendant[] [has] made a clear showing of facts which [ ] establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent."  *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000).  An alternative forum is deemed adequate if defendant is amenable to service of process there and the forum provides "some remedy" for the wrong suffered by Plaintiff.  *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1178 (9th Cir. 2006).  In rare circumstances, a forum may be deemed inadequate where the remedy it offers is "clearly unsatisfactory."  *Id.* (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 454 (1981)).

Defendants contend that Singapore is an adequate alternative forum, and Plaintiff admits that there is "no reason to dispute that as a matter of formality, the Courts of Singapore, in a commercial case, would abide by their own rules of evidence, and by rules of procedure for a fair trial."  Dkt. No. 45 at 3.  However, Plaintiff contends that Singapore is not an adequate alternative forum because "Singapore may have a conflict of interest in resolving a dispute in which [SCB] and its appointed receivers are a party."  *Id.*  According to Plaintiff, SCB has a 16% ownership in Temasek Holdings, Pte. Ltd, a company owned by the Ministry of Finance of Singapore.  *Id.*  Plaintiff also makes a thinly veiled argument that the insolvency proceedings of SSIPL are not transparent.  *Id.* at 4–5 ("a glimpse at the experience with the Singapore insolvency proceedings provides anything but assurances about fairness and transparency.")

Plaintiff's contention that Singapore is not an adequate alternative forum is unavailing.  Federal courts have repeatedly held that Singapore constitutes an adequate alternative forum for a wide variety of claims.  *See, e.g.*, *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696 (9th Cir. 1995); *Anwar v. Fairfield Greenwich Ltd.*, 742 F. Supp. 2d 367, 377 (S.D.N.Y. 2010) ("the

1    Court is satisfied that Singapore offers more than adequate remedies for the subject of Plaintiffs'

2    lawsuit"); *Van Schijndel v. Boeing Co.*, 434 F. Supp. 2d 766 (C.D. Cal. 2006); *Sherrill v.*

3    *Brinkerhoff Mar. Drilling*, 615 F. Supp. 1021, 1031 (N.D. Cal. 1985) ("Singapore's status as a

4    major center of international trade and commerce and the base of operation in South East Asia for

5    many corporations, American and foreign" is a fact that "lends weight to [the] assertion of its

6    adequacy as an alternative forum.").

7        Defendants also amply establish that Singapore has an independent judiciary with a range

8    of enforcement procedures available to a successful plaintiff.  Dkt. No. 34 ¶¶ 10, 18–20.  The tort

9    of conversion is actionable in Singapore, "the roots of which can be traced to the English common

10   law," and the Singapore High Court will have jurisdiction over Plaintiff's conversion claim "if the

11   Defendants are validly served" via proper procedures, or if Defendants submit to the jurisdiction

12   of the Singapore High Court.  *Id.* ¶¶ 42–43.[3]  Defendants have provided a detailed overview of the

13   legal system and legal authority in Singapore, which is sufficient evidence to conclude that

14   Plaintiff will have access to "some remedy" in Singapore.

15       When an alternative forum is adequate, dismissal on *forum non conveniens* grounds is then

16   appropriate where the "'private interest' and the 'public interest' factors strongly favor trial in a

17   foreign country."  *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001).  Private

18   interest factors include (1) relative ease of access to sources of proof; (2) availability of witnesses;

19   and (3) all other practical factors favoring an expeditious and inexpensive trial.  *Lockman*

20   *Foundation v. Evangelical All. Mission*, 930 F.2d 764, 767 (9th Cir. 1991).  Public interest factors

21   include "court congestion, the local interest in resolving the controversy, and the preference for

22   having a forum apply a law with which it is familiar."  *Contact Lumber Co. v. P.T. Moges*

23   *Shipping Co.*, 918 F.2d 1446, 1452 (9th Cir. 1990).

24       Such is the case here.  California has a *de minimis* interest (at best) in resolving an

25   admiralty case between parties from foreign countries.  The Complaint is merely premised on the

26   allegation that "[i]nstead of notifying Plaintiff that SSIPL had come under administrative

27

28   _____

[3] Though not a fact the Court considers necessary to its conclusion, the Borrelli Defendants state that they are amenable to service of process in Singapore.  Dkt. No. 31 at 3.

United States District Court
Northern District of California

receivership, Defendants continued to commercially exploit the Vessel for their own use and gain in carrying cargoes of crude oil *worldwid*e upon voyages on the high seas and the navigable waters of several countries." Compl. ¶ 23 (emphasis added).  These alleged acts, even if true, occurred in Singapore and the British Virgin Islands through a private contractual appointment of Receivers over Pasira's asset in the British Virgin Isles—the SSIPL shares—and the changing of directors of SSIPL in Singapore.  None of this pertains to California.

There are no California residents in this case, and the only connection California has to the case is redelivery of the Vessel.  But the relevant evidence and witnesses are located abroad, most of the witnesses are in Singapore, and the difficulties of litigating in the United States what is essentially a foreign dispute involving entirely foreign parties, foreign acts and a related foreign proceeding would impose unnecessary costs.  Accordingly, the Court will also grant the motion to dismiss based on *forum non conveniens*.  Because the Court finds that it lacks personal jurisdiction, or in the alternative would dismiss on *forum non conveniens* grounds, the Court will not address Defendant's 12(b)(6) arguments.

## IV.     CONCLUSION

The Court **GRANTS** Defendants' motions to dismiss for lack of personal jurisdiction and based on *forum non conveniens*.  Dkt. No. 27, 31, 36.  The Court **DIRECTS** the Clerk to terminate the case.

**IT IS SO ORDERED.**

Dated:   4/20/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge

9